IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| ADVANTA BANK CORP.,<br>As Assignee of CamEra, Inc.<br>1020 Laurel Oak Road<br>Voorhees, New Jersey 08043<br><br>    Plaintiff,<br><br>v.<br><br>OURISMAN CHEVROLET<br>COMPANY, INC.<br>d/b/a OURISMAN CHEVROLET<br>1400 Branch Avenue<br>Marlow Heights, Maryland 20748<br><br>SERVE ON:<br>    Teresa D. Boyd, Resident Agent<br>    4400 Branch Avenue<br>    Marlow Heights, Maryland 20748<br><br>    Defendant. | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * | CIVIL ACTION NO.: _____ |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT

Advanta Bank Corp., as Assignee of CamEra, Inc., by its attorneys, Angus R. Everton and Morgan Shelsby Carlo Downs & Everton P.A., hereby files this Complaint against Ourisman Chevrolet Co., Inc. d/b/a Ourisman Chevrolet, and says:

## PARTIES

1.    Plaintiff, Advanta Bank Corp., whose offices are located at 1020 Laurel Oak Road in Voorhees, New Jersey, is Assignee of CamEra, Inc.

2. Plaintiff is a commercial finance company.

3. Defendant, Ourisman Chevrolet Co., Inc. d/b/a Ourisman Chevrolet ("Defendant") is, upon information and belief, a Maryland corporation with a principal office located at 1400 Branch Avenue, Marlow Heights, Maryland 20748, and a principal place of business at 4400 Branch Avenue, Marlow Heights, Maryland 20748.

## JURISDICTION

4. This Court has jurisdiction over this matter on the basis of diversity of citizenship pursuant to 28 U.S.C. Sections 1332 and 1367 and on the basis of 28 U.S.C. Sections 2201 and 2202.

## VENUE

5. Venue is proper in this District pursuant to 28 U.S.C. Section 1391.

## COUNT I

6. On or about April 21, 1998, CamEra and Plaintiff executed a Master Agreement for Assignment of Leases, whereby CamEra agreed to assign the leasing portion of certain leases to Plaintiff. See a true an correct copy of the Master Agreement for Assignment of Leases attached hereto as Exhibit A and incorporated herein by reference.

7. On or about May 18, 2000, Defendant executed the Lease of certain equipment with CamEra wherein Defendant agreed to remit seventy-two (72) monthly payments of $2,607.00. See a true and correct copy of the Lease attached hereto as Exhibit B and incorporated herein by reference. The Lease was accepted by CamEra on July 18, 2000.

2

8. On or about July 18, 2000, the same day CamEra accepted the Lease, CamEra assigned the Lease to Plaintiff, pursuant to the Master Agreement. See a true and correct copy of the Plaintiff's approval of the same attached hereto as Exhibit C and incorporated herein by reference.

9. On or about July 18, 2000, Defendant executed the Delivery and Acceptance Certificate, certifying, *inter alia*, that the equipment was delivered, installed and in good and satisfactory operating order. See a true and correct copy of the Delivery and Acceptance Certificate attached hereto as Exhibit D and incorporated herein by reference.

10. Defendant defaulted under the specific terms of the Lease by failing to, among other things, remit payment to Plaintiff when due and owing.

11. Despite numerous attempts and demands, Defendant has not remitted payment to Plaintiff.

12. Pursuant to the default provisions of the Lease, Defendant is liable for the entire accelerated balance under the Lease, plus costs, sales tax, late fees and security deposit totaling $111,786.83 ($98,540.17 (accelerated balance) + $5,927.01 (sales tax) + $5,562.65 (late fees) + $150.00 (court costs) + $2,607.00 (security deposit) = $111,786.83).

13. Pursuant to paragraph 13 of the Lease entitled "Default", Plaintiff is also entitled to reasonable attorney fees in the amount of $24,635.04.

WHEREFORE, Plaintiff, Advanta Bank Corp., demands that judgment be entered against the Defendant, Ourisman Chevrolet Co., Inc. d/b/a Ourisman Chevrolet, in the amount of $111,786.83, plus attorneys fees in the amount of $24,635.04, for a total of $136,421.87, plus any other and further relief as this Court deems just and proper.

## COUNT II
### Quantum Meruit

14. The allegations of paragraphs 1 through 13 above are incorporated herein by reference.

15. To the extent that Defendant has benefited from use of the equipment under the Lease and not having paid for them, Defendant has become unjustly enriched at Plaintiff's expense.

WHEREFORE, Plaintiff, Advanta Bank Corp., demands that judgment be entered against the Defendant, Ourisman Chevrolet Co., Inc. d/b/a Ourisman Chevrolet, in the amount of $111,786.83, plus attorneys fees in the amount of $24,635.04, for a total of $136,421.87, plus any other and further relief as this Court deems just and proper.

Respectfully submitted,

MORGAN SHELSBY CARLO DOWNS & EVERTON P.A.

Angus R. Everton
4 North Park Drive
Suite 404
Hunt Valley, Maryland 21030
(410) 584-2800
*Attorneys for Plaintiff*

EXHIBIT "A"

# Master Agreement For Assignment Of Leases

This Master Agreement for Assignment of Leases ("Agreement") is entered into by and between Advanta Business Services Corp., a Delaware corporation with its principal place of business located at 1020 Laurel Oak Road, Voorhees, New Jersey (referred to below as "Advanta") and CamEra, Inc. a Florida corporation with its principal place of business located at 1615 118th Avenue North, St. Petersburg, Florida (referred to below as "you") and will become effective on the later of the dates this Agreement is signed by Advanta and you. In consideration of the promises, terms and conditions stated below, and intending to be legally bound, Advanta and you agree as follows:

1. **Referral of Leases; Sale and Assignment of Leases**. You are in the business of selling equipment generally described as security equipment (referred to below as "equipment" or "leased equipment"). Also, from time to time, you enter into leases between you (as the lessor) and your customers (as the lessees) pursuant to which you lease your equipment to such customers. You may, from time to time, offer to sell and assign completed leases to Advanta, and Advanta may offer to purchase and take assignments of such leases from you. Advanta may reject, in its sole and absolute discretion, any leases presented to it for sale and assignment.

2. **Documentation**. This Agreement will apply to and govern transactions in which you will be the original lessor entity and which will be sold and assigned by you to Advanta (referred to below as an "Assigned Lease"). For each Assigned Lease, you will execute a separate schedule of assignment of lease ("Schedule") in a form attached hereto as Exhibit "A". You agree to enter into and/or provide such other agreements and documents (both before and after each transaction is finalized) as may be reasonable and necessary to complete the transaction or effectuate the intention of the parties. UCC-1 financing statements will be required on all transactions over $25,000. All lease and other documentation must be acceptable to Advanta, and all of Advanta's conditions must be satisfied, in Advanta's sole discretion, before Advanta will be obligated to pay you for the transaction.

3. **Advanta's Review of Transactions**. You agree that Advanta will have the right to review and investigate each transaction and establish conditions which must be satisfied before being obligated to conclude the transaction and pay you. This investigation and the conditions may include, but not necessarily be limited to (a) review and approval of the form and content of all lease agreements, guarantees, delivery and acceptance receipts, invoices, and other documents relating to the leases; (b) credit approval of all lease applicants and guarantors; (c) written and verbal verification of equipment delivery and installation to the lessee's satisfaction, and (d) review of the equipment type.

4. **Purchase Price**. The consideration to be paid to you by Advanta for each Assigned Lease will be based on Advanta's then current purchase rates, as mutually agreed to by you and Advanta, which rates shall be deemed to be incorporated by reference herein.

5. **Completeness of Information**. You understand that Advanta will be relying on the information you will be providing with respect to each transaction (including all information relating to the creditworthiness of the lease applicant) and that Advanta may not independently verify the accuracy of such information. In submitting each transaction to Advanta, you will inform Advanta of all material information regarding the transaction (including but not limited to the lessee applicant, the applicant's creditworthiness, and the equipment), and will keep Advanta informed as to all new material information discovered by you following the initial submission of the transaction to Advanta.

6. **No Submission of Applications to Other Finance Companies**. You agree not to submit the same application or transaction to any other finance or leasing company for a period of two working days following your submission of the application to Advanta.

7. **Legal Notice Requirements**. You agree to comply with and discharge all requirements of all federal and state laws that require certain notices to be provided to credit applicants (including but not limited to the Equal Credit Opportunity Act, sometimes known as "Regulation B") with respect to each Assigned Lease you refer to Advanta.

8. **Due Care in the Preparation of Lease Documents**. You agree to use due care in preparing all lease documents and in arranging for those documents to be signed by the lessees and guarantors. You agree that if you delegate this responsibility to another party, you will be responsible for such other party's negligence or improper conduct.

9. **Your Expenses**. Advanta shall not be responsible for any expenses whatsoever incurred by you in connection with any lease transaction submitted by you to Advanta.

10. **No Agency; No Authority to Bind Advanta**. This Agreement does not create an agency, partnership or joint venture relationship between you and Advanta. You agree that you will not act as or represent yourself as Advanta's agent, partner or joint venturer and will not use Advanta's name or trademark as part of your name. You agree that you will not have authority to bind Advanta with respect to any matter.

12/04/01 TUE 14:22 FAX 2154446183    ADVANTA CORP SERV    ☑001

11. <u>Incorporation into All Lease Transactions</u>. This Agreement is hereby automatically incorporated into and will apply to all Assigned Lease transactions whether they occurred/arose before or after the date this Agreement becomes effective.

12. <u>Assigned Leases - Property and Rights Being Sold and Assigned</u>. With regard to each Assigned Lease, this Agreement and the Schedule will operate to sell, assign and transfer to Advanta and its successors and assigns, all of your right, title and interest in and to such Assigned Lease, including, without limitation, the chattel paper, the full remaining lease receivable stream, your right, title and interest in and to the leased equipment, the residual (if any), all of your security under the lease, the lessee's option to purchase the equipment at the end of the lease term (if any), and all of your rights and remedies under the lease, including but not limited to, the right to collect any and all lease payments due and to become due from the lessee, and further including the right to undertake all legal proceedings that you might take were it not for the assignment. Advanta shall perform all lease servicing, including sales and property tax billing and remission. It is agreed that no sale/assignment shall relieve you from your obligations under the lease, and you shall continue to perform your obligations thereunder. Advanta shall not be obligated to assume, and by its acceptance of any sale/assignment, shall not be deemed to have assumed any of your obligations under any such lease.

13. <u>No Authority to Exercise Lessor's Rights Following Sale/Assignment</u>. Following the sale/assignment of any Assigned Lease, you will have no authority to and will not accept collections, repossess or consent to the return of the leased equipment, or modify the lease agreement or other documents, or do any other act which the lessor has the right to do under the lease, unless there is a repurchase by you under Section 15 below or such action has been pre-approved by Advanta. You will promptly send to Advanta any payments and correspondence you receive from the lessee or other person following the transfer of the lease to Advanta.

14. <u>Your Representations and Warranties to Advanta</u>. You hereby represent and warrant to Advanta with respect to each Assigned Lease that:

    (a) Such lease resulted from a bona fide lease of the equipment described therein for business or commercial use, and all information stated in the lease is true, correct and complete; each copy of the lease documents submitted by you to Advanta will be, at the time so submitted, a true, correct and complete copy of the document it purports to be;

    (b) The lease agreement is in full force and effect and is valid and binding upon and enforceable against the lessee in all respects in accordance with its terms, except as enforcement may be affected by bankruptcy or insolvency laws or by general principles of equity;

    (c) The guarantee(s), if any, with respect to each lease transaction are in full force and effect and are valid and binding upon and enforceable against the guarantor(s) in all respects in accordance with their terms, except as enforcement may be affected by bankruptcy or insolvency laws or by general principles or equity;

    (d) The lease agreement is the sole and entire understanding and agreement with the lessee with respect to the lease of the equipment;

    (e) To the best of your knowledge, the lease was duly authorized and properly executed by a lessee having legal capacity to enter into the lease;

    (f) The amount of the remaining lease receivable represented by you at the time the lease is referred/sold to Advanta is correct;

    (g) There are no actual, pending or threatened defenses, claims, demands, counterclaims, suits or set-offs of any kind whatsoever capable of being asserted against you or Advanta by the lessee or the guarantor(s) (if any) with respect to the lease transaction, the lease and/or the guarantee(s), except any such matters that may arise out of Advanta's improper acts or omissions;

    (h) The lease and guarantee(s) (if any) have not been sold, assigned or pledged to any person or entity other than Advanta;

    (i) The lessee has no right (without the lessor's written authorization) to cancel the lease or return the equipment prior to the expiration of the initial term of the lease;

    (j) You are the sole owner of the lease (including the chattel paper) and have the legal power to sell and assign the same to Advanta, and the same is free and clear of any liens, security interests, rights of third parties and other encumbrances of any kind whatsoever;

    (k) The lease evidences a valid reservation of title to or first priority perfected security interest in the leased equipment capable of being recorded in Advanta's name;

    (l) The leased equipment has been delivered to and accepted by the lessee in a condition satisfactory to the lessee;

    (m) You have good and marketable title to the equipment at the time it is sold and transferred to Advanta, free and clear of any liens, security interests, rights of third parties and other encumbrances of any kind whatsoever;

    (n) The lessee is not in default with respect to any obligation under the lease, including any event which with the passing of time or the giving of notice would constitute an event of default thereunder;

    (o) You have performed all of your obligations to the lessee (including, without limitation, your obligations relating to delivery, installation, and service of or to the equipment). In addition, you covenant (promise) to Advanta that, following the date of the sale/assignment of the lease to Advanta, you will continue to perform all of your obligations to the lessee, if any;

    (p) With the exception of upgraded or add-on equipment, all of the leased equipment was new at the time of delivery to the lessee unless disclosed otherwise on the lease agreement or in writing to Advanta;

    (q) The consideration paid by Advanta will not include any product, service or other thing of value not disclosed on the lease agreement or in the invoice you provide to Advanta;

12/04/01 TUE 14:24 FAX 2154446183    ADVANTA CORP SERV    ☑002

(r) You have not granted, and will not grant, to any lessee any allowance, credit memo, adjustment, or enter into any settlement or amendment of the lease agreement or other documents relating to a lease without prior written consent to Advanta;

(s) You have furnished Advanta with all credit information known to you concerning the lessee under each lease, including but not limited to all written credit information in your possession provided by credit bureaus and other third parties; no such information (including negative information and ratings) has been altered, deleted, or omitted by you; and all credit references contained in such information were supplied by the lessee and not by you or any other party;

(t) To the best of your knowledge, the lessee has not made an assignment for the benefit of creditors, has not ceased to do business as a going concern, nor has filed or has had filed against it a petition under the Bankruptcy Code or for the appointment of a receiver;

(u) The lease and the lease transaction complies with all applicable state and federal laws and regulations, including but not limited to usury laws;

(v) The lease transaction was not originated by, or brokered to you, by any third party, unless this fact has been disclosed to Advanta in writing prior to Advanta's acceptance of the transaction. Without limiting the generality of the foregoing, the term "brokered" as used in this Agreement includes all transactions submitted wherein it is contemplated that any remuneration (including but not limited to fees, "points" or commissions) will be paid by you to any party other than your employees;

(w) The lease transaction submitted by you to Advanta has not been split by you between various funding sources, and the lease request is for the full amount the lessee is applying to you for whether the request is for various types of financing or leasing, unless otherwise disclosed to Advanta in writing prior to Advanta's acceptance of the transaction;

(x) The leased equipment is merchantable, fit for its purposes and not defective. You have not misrepresented the equipment, or misrepresented how the equipment will perform, to the lessee;

(y) You hereby acknowledge that the principal leasing transaction documents to be signed by lessees and other parties (each a "Leasing Document") have been pre-approved by Advanta and you understand that it will not be practicable for Advanta to review each such Leasing Document in detail at the time it is submitted by you to Advanta to ascertain whether it conforms to the pre-approved form. Accordingly, you covenant that each such executed Leasing Document submitted by you to Advanta shall conform in all material respects to the pre-approved form, and you agree that Advanta may, but shall not be required to verify the conformance of such Leasing document to the pre-approved form;

(z) The lease transaction was originated and submitted to Advanta by your corporate or other business entity and not an affiliate of such entity or other related or unrelated third party;

(aa) Intentionally Omitted;

(bb) Neither the leased equipment, including but not necessarily limited to hardware or software, if any, nor the sale, distribution or leasing of same, violates or infringes upon the intellectual property or similar rights of any person or entity, including, without limitation, copyright, patent, trademark or trade secret rights; and

(cc) The equipment lease agreement conforms in all material respects to the form(s) of agreement attached hereto as Exhibit "B".

Your representations, warranties and covenants stated in this Section 14 shall be continuing and shall survive the sale/assignment of the lease transaction to Advanta.

**15. Breach of Representation, Warranty, Covenant or Agreement.** In the event you breach any representation, warranty, covenant or agreement stated in this Agreement with respect to any Assigned Lease, then, upon fifteen (15) days' written notice from Advanta, you shall repurchase the lease from Advanta for an amount equal to the remaining balance of payments due plus the residual value (if any) under the lease discounted at the same purchase rate as was used in the purchase price calculation at the time of the sale and assignment of the lease to Advanta, at the time demand is made, plus applicable taxes, outstanding late charges and other amounts due to Advanta under the lease ("Repurchase Price"). Following your payment of such repurchase price to Advanta, Advanta shall assign the lease and all its rights to you without recourse. This shall be in addition to any other rights or remedies Advanta may have at law or in equity. In addition, upon the occurrence of any breach of the representations, warranties, covenants or other agreements hereunder, Advanta may elect to rescind any pending approvals with respect to other leases which have been presented by you to Advanta. The only recourse under this Agreement will occur in the event of a breach of a representation, warranty, covenant as outlined in this section.

**16. Your Indemnification of Advanta.** You hereby agree to defend, indemnify and hold Advanta harmless from and against all claims, demands, losses and liabilities, suits and legal proceedings, and any and all related costs and expenses (including reasonable attorney's fees) arising out of or in way related to a: (i) a breach of any of your representations, warranties, covenants or agreements stated in this Agreement; or (ii) the equipment, its delivery, installation, manufacture, design and functioning thereof. In addition, this indemnity will apply in cases where a claim, demand, loss, liability, suit or legal proceeding against Advanta arises out of your or your employees' or agents' acts or omissions. This indemnity is a continuing indemnity and shall survive termination of this Agreement.

**17. Taxes.** Any taxes imposed by any federal, state or local taxing authority relating to the sale/assignment of leases to Advanta hereunder (excluding only taxes payable in respect of Advanta's income and taxes that may be passed though to lessees pursuant to the express terms of the lease agreements) shall be your obligation and liability.

**18. Conditions Precedent.** The obligation of Advanta to purchase any Equipment Lease hereunder is subject to the fulfillment of the following conditions precedent:

12/04/01 TUE 14:25 FAX 2154446183　ADVANTA CORP SERV　☒003

(a) Power of Attorney. You shall delivered to Advanta an executed power of attorney allowing Advanta to (i) endorse in your name checks and drafts received from lessees which are payable to you (ii) execute and file on your behalf as the secured party and assignee, financing statements under the UCC evidencing Advanta's security interest in the equipment, in the form attached hereto and marked as Exhibit "C"; and

(b) UCC Statement(s). A UCC financing statement or statements naming you as the "Debtor" and Advanta as the "Secured Party" covering the leases being purchased by Advanta, as described herein, shall have been delivered to Advanta in a form and substance satisfactory to Advanta. These financing statements are precautionary filings intended to evidence a "true sale" of the equipment leases.

## 19. AGREEMENT TO ASSIGN LEASE AND RESIDUAL.

19.1. Following the expiration of the term of an Assigned Lease booked with a $1.00 residual, and provided the lessee is not then in default under the Assigned Lease and has paid Advanta all scheduled lease payments, charges and other sums due to Advanta and has complied with all other obligations, terms and conditions under the Assigned Lease, Advanta shall assign the Assigned Lease and equipment to the you for $1.00.

19.2. In the event lessee is in default under the Assigned Lease at any time, Advanta may, in its sole discretion (a) offer you the opportunity to take an assignment of the Assigned Lease and equipment by paying to Advanta the Repurchase Price as stated in Section 15, or (b) with respect to that particular Assigned Lease nullify the terms of this Section 19 without any notice to you.

19.3. It is understood and agreed that in the event the lessee chooses to buy-out of the Assigned Lease under this Agreement prior to termination and the same is permitted by Advanta and you, Advanta shall be entitled to all proceeds therefrom, and this Section 19 shall automatically become null and void with respect to that Assigned Lease.

19.4. Advanta shall have no duty either prior or subsequent to any assignment hereunder to repossess the equipment or undertake to exercise any other right or remedy against Lessee under the terms of the Assigned Lease or under law.

## 20. Add-Ons, Trade-Ups and Buy-outs.
The parties acknowledge that the lessee has no contractual right to buy-out or prepay the Assigned Lease. However, in the event a lessee requests a buyout, Advanta will notify you of the request, and if approved by you, the request will be handled in a timely fashion.

20.1 Add-Ons. In the event a lessee under an Assigned Lease desires to add on a new piece of equipment to the existing leased equipment and lease same without trading in or otherwise disposing of any of the existing leased equipment, and you and Advanta agree to such add-on, then a separate equipment lease shall be executed, and the additional leased equipment shall be listed therein along with the additional lease terms. You agree to have lessee execute all necessary and required documents to include this additional Assigned Lease. If Advanta, in its sole discretion, does not consent to the add-on, then you shall repurchase the Assigned Lease from Advanta for the Repurchase Price as set forth in Section 15 of this Agreement, upon the receipt of which payment in full to Advanta, Advanta will assign to you all of its right, title and interest in and to the Assigned Lease and related equipment.

20.2 Trade-Ins. In the event that you agree to allow a lessee to buy-out or trade-in all or part of the leased equipment for different equipment under an Assigned Lease, the original Assigned Lease shall be terminated in its entirety and a new lease shall be established, in which event you or the lessee shall buy out the existing Assigned Lease and pay Advanta the Repurchase Price as set forth under Section 15 of this Agreement. Upon receipt of such buy-out payment in full to Advanta, Advanta will assign to you all of its right, title and interest in and to the Assigned Lease and related equipment. You agree to then refer the new equipment lease transaction to Advanta for possible sale and assignment in accordance with the procedures set forth in this Agreement. If Advanta purchases the new equipment lease, the Purchase Price shall be calculated as per Section 4.

20.3 Cap on Buy-Backs. In no event shall buy-backs or early terminations exceed 10% per year of your entire portfolio of Assigned Leased sold and assigned to Advanta hereunder.

20.4 In no event shall buy-backs or early terminations exceed 10% per year of your entire portfolio of Assigned Leases sold and assigned to Advanta hereunder.

## 21. Miscellaneous.

(a) Complete Agreement. This Agreement and the other agreements contemplated herein contain the full and complete agreement between the parties on the subject matter set forth herein and supersede all other prior written agreements and understandings between the parties.

(b) Governing Law. This Agreement and the other agreements contemplated herein shall be governed by and construed according to the laws of the state of New Jersey and any claims arising under this Agreement shall be resolved in the courts of the state of New Jersey.

(c) Modifications. This Agreement and the other agreement contemplated herein may not be modified except by a writing signed by executive officers of the parties.

(d) Binding on Successors. This Agreement and other agreements and obligations entered into pursuant to this Agreement shall inure to the benefit of, and be binding upon, Advanta and Vendor and their respective successors and assigns.

(e) Survival of Representations/Warranties. The representations, warranties, indemnities and recourse provisions (if any) contained in or made pursuant to this Agreement shall survive the termination of this Agreement, in addition to any other term or provision which, pursuant to the express terms stated elsewhere herein, survives termination.

(f) Faxed and Copied Documents. The parties intend and agree that a carbon copy, photocopy, or facsimile of this document with their signature thereon shall be treated as an original, and shall be deemed to be as binding, valid, genuine, and authentic as an original-signature document for all purposes, including all matters of evidence and the "best evidence" rules.

Advanta Business Services Corp.

By: _____

Print name: COLE SILVER

Title: SVP          Date: 4/28/98

Camera, Inc.

By: _____

Print name: David C. Reilly

Title: President     Date: 4/21/98

# Schedule Assignment Of Lease

Reference: _____    Date: _____

Lessee: _____

Lessor: _____

Leased Equipment (Attach separate schedule if necessary):

_____

_____

Lease Agreement Dated: _____

FOR VALUE RECEIVED, the undersigned ("Assignor"), does hereby sell, assign and transfer to Advanta Business Services Corp., its successors and assigns ("Assignee"), the annexed equipment lease agreement between Assignor as lessor and the lessee identified above, together with all of Assignor's right, title and interest in and to the equipment described therein, and all of Assignor's rights and remedies thereunder, including the right to collect any and all rental payments due and to become due thereon, and all monies due or to become due in connection with the exercise by the lessee of any option, if any, to purchase the leased equipment, and further including the right in Assignee's or Assignor's name to take all proceedings, legal, equitable or other, that Assignor might take, save for this assignment.

THIS SCHEDULE IS SUBJECT TO THE TERMS AND CONDITIONS OF A MASTER AGREEMENT FOR ASSIGNMENT OF LEASES BY AND BETWEEN ASSIGNOR AND ASSIGNEE, WHICH IS HEREBY INCORPORATED BY REFERENCE HEREIN.

The parties intend and agree that a carbon copy, photocopy, or facsimile of this document with their signature thereon shall be treated as an original, and shall be deemed to be as binding, valid, genuine, and authentic as an original-signature document for all purposes, including all matters of evidence and the "best evidence" rules.

WITNESS: _____    ASSIGNOR: _____

_____    By: _____

                            _____
                            (Print name, title, date)

**EXHIBIT "A"**

# CamEra
**KEEPING YOUR BUSINESS IN FOCUS**

Corporate Headquarters:
1615 118th Avenue North
St. Petersburg, FL 33716
(813) 576-6399

3-31-

## EQUIPMENT LEASE AGREEMENT

**1. Parties and Agreement.** CamEra (also referred to as Lessor, We, Us, Our, any assignee of CamEra) agrees to lease to You (also referred to as Customer, You, Your) and install the closed circuit television system ("Equipment") listed below and as modified by supplements to this Master Agreement from time to time signed by You and Us. You promise to pay the Lease payments according to the payment schedule on this page and to perform the Obligations ("Obligations") set forth on the reverse.

Legal Business Name: _____  dba: _____
Equipment Location: CAMERA
City: _____  County: _____  Phone: _____
Billing Address: _____
City: _____  State: _____  Zip: _____

**2. Description of Equipment.** — Closed Circuit Television System Consisting of the Following:

_____
_____
_____
_____
_____

**3. Term and Payments.** This Agreement is for a term of 48 months and is noncancelable. For Your convenience, CamEra will move the Equipment to another nearby location one time at no charge. We offer an option which allows You to upgrade Your Equipment and rewrite the Lease after 18 months for a similar or higher amount.

____ Payments of $ _____ (Plus Applicable Taxes)       A Security Deposit of $ _____ is due. (Plus Applicable Taxes)

Lease Agreement continues on reverse side. →

You agree to all terms and conditions shown above and on the reverse side. This Agreement contains all of the terms governing the leasing of the above Equipment and may not be modified except by written agreement signed by CamEra and You.

Authorized Customer Signature _____  Date _____

Witness: _____

Print Name and Title: _____

## PERSONAL GUARANTEE

To induce CamEra to make this Lease to You, knowing that CamEra is relying on this guaranty as a precondition to making this Lease, I (or if more than one, then all of us, jointly and severally) INDIVIDUALLY, PERSONALLY, ABSOLUTELY AND UNCONDITIONALLY GUARANTY to CamEra (and any person or firm CamEra may transfer its interest to) all payments and other obligations owed by the Customer to Camera under the Lease and any add-on leases and future leases between CamEra and Customer, including but not limited to attorney's fees and legal costs incurred in enforcing the Lease. I will also pay all reasonable costs and fees incurred by CamEra in enforcing this Guaranty. Accounts settled between CamEra and the Customer will bind me. I waive notice of demand and notice of default, and I agree that CamEra may proceed directly against me without first proceeding against the Customer or the security (including the Equipment). This guaranty shall be governed by the laws of the state of Lessor or Assignee. I FREELY CONSENT TO PERSONAL JURISDICTION IN THE COURT OF THE LESSOR OR ITS ASSIGNEE AND WAIVE TRIAL BY JURY. This guaranty will bind my heirs, representatives and successors.

Signature (Individually, No Title) _____  Date _____
Signature (Individually, No Title) _____  Date _____

EXHIBIT "B"

White - Leasing Co.   Green - Corporate   Canary - Customer   Pink - Branch   Goldenrod - Customer Temp.

# Specific Power Of Attorney

Know all men by these presents that CamEra, a Florida corporation, its successors and assigns (hereinafter "Assignor"), hereby absolutely, unconditionally and irrevocably empowers and appoints Advanta Business Services Corp., a Delaware corporation, its successors and assigns (hereinafter "Advanta") with full power of substitution, as Assignor's true and lawful attorney-in-fact for Assignor and in Assignor's name, place and stead, to:

(1) Endorse checks, drafts, money orders and the like made payable to Assignor by lessees and/or other debtors (if any) under equipment leases assigned by Assignor to Advanta which are properly payable to Advanta pursuant to a certain Master Agreement for Assignment of Leases by and between Assignor and Advanta dated the same date as this Specific Power of Attorney; and deposit the same in a bank account or accounts by Advanta; and

(2) Prepare, execute and file on behalf of Assignor in capacity as the Secured Party, financing statements pursuant to the Uniform Commercial Code (including, without limitation, "UCC-1," "UCC-2" and/or "UCC-3" financing statements and/or other statements and/or amendments to any or all of the foregoing) to evidence Advanta's first priority security interest in and to various equipment leases, chattel paper, equipment leases in which Assignor is named as the lessor and/or owner of such equipment, collateral, security and proceeds; and

(3) Exercise, do and perform any act, right, power, duty or obligation whatsoever that Assignor now has or may acquire the legal right, power or capacity to exercise, do or perform in connection with the foregoing.

(4) The parties intend and agree that a carbon copy, photocopy, or facsimile of this document with their signature thereon shall be treated as an original, and shall be deemed to be as binding, valid, genuine, and authentic as an original-signature document for all purposes, including all matters of evidence and the "best evidence" rules.

IN WITNESS WHEREOF, Assignor, through the undersigned officer, has executed this Specific Power of Attorney on the 21st day of April, 1998.

Assignor: CamEra, Inc.

By: _____

David C. Reilly           President
(Print name)              (Title)

Sworn to and subscribed to before me this 21 day of April, 1998.

_____
Notary Public

JANICE LYNN DEAN
COMMISSION # CC 724178
EXPIRES SEP 7, 2001
BONDED THRU
ATLANTIC BONDING CO., INC.

**EXHIBIT "C"**

s:mikecole/projects/camERA.dot          Page 7 of 8          3054R0496

**EXHIBIT "B"**

# CamEra
**KEEPING YOUR BUSINESS IN FOCUS** ®

Corporate Headquarters:
1615 118th Avenue North
St. Petersburg, FL 33716
(727) 570-3900

A294593
050-5515818-001

## EQUIPMENT LEASE AGREEMENT

**1. Parties and Agreement.** CamEra, Inc. (also referred to as Lessor, We, Us, Our, any assignee of CamEra) agrees to lease to You (also referred to as Customer, You, Your) and install the closed-circuit television system ("Equipment") listed below and as modified by supplements to this Master Agreement from time to time signed by You and Us. You promise to pay the Lease payments according to the payment schedule on this page and to perform the Obligations ("Obligations") set forth on the reverse.

Legal Business Name: **Ourisman Chevrolet Co, Inc.** dba: **Ourisman Chevrolet**
Equipment Location: **4400 Branch Avenue** Phone: **(301) 423-4000**
City: **Marlow Heights** County: State: **MD** Zip: **20748**
Billing Address: City: State: Zip:

**2. Description of Equipment.** - Closed-Circuit Television System Consisting of the Following: 1 Ch Link Software
- 6 - Indoor Color Cameras   1 Color Quad   18 Photobeams   1 - Video Monitoring
- 6 - Outdoor Dome w/Housing/Strobe   2 - Mux Remote Panels   6 Voice Warning w/Speakers
- 1 - CamEra Dome Controller   1 - UPS   1 - 16 Cam Duplex Mux   1 - Link Transmitter w/modem
- 3 - Tabletop Color Monitors   31 - VHS Tapes   1 - LockBox   4 - Two Way Audio w/Speaker
- 1 - Multiday Recorder   6 DSpec w/Strobe   7 - Lightning Protection   16 - Two Way Speakers

**3. Term and Payments.** This Agreement is for a term of ~~~~ months and is noncancelable. We offer an option which allows You to upgrade Your Equipment and rewrite the Lease after 18 months for a similar or higher amount.

**72** Payments of $ **2,607** (Plus Applicable Taxes)   A Security Deposit of $ **2,607** (Plus Applicable Taxes) is due.

Lease Agreement continues on reverse side. →

You agree to all the terms and conditions shown above and on the reverse side. This Agreement may not be modified except by written agreement signed by CamEra and You.

Witness: _[signature]_

Authorized Customer Signature: _Ourisman Chevrolet Co Inc by John M. Ourisman_   Date: **18 MAY 2002**

Print Name and Title: **JOHN M. OURISMAN - PRESIDENT**

## GUARANTY

To induce CamEra to make this Lease to You, knowing that CamEra is relying on this guaranty as a precondition to making this Lease, I (or if more than one, then all of us, jointly and severally) INDIVIDUALLY, PERSONALLY, ABSOLUTELY AND UNCONDITIONALLY GUARANTY to CamEra (and any person or firm CamEra may transfer its interest to) all payments and other obligations owed by the Customer to CamEra under the Lease and any add-on leases and future leases between CamEra and Customer, including but not limited to attorney's fees and legal costs incurred in enforcing the Lease. I will also pay all reasonable costs and fees incurred by CamEra in enforcing this Guaranty. Accounts settled between CamEra and the Customer will bind me. I waive notice of demand and notice of default, and I agree that CamEra may proceed directly against me without first proceeding against the Customer or the security (including the Equipment). This guaranty shall be governed by the laws of the state of Lessor or Assignee. I FREELY CONSENT TO PERSONAL JURISDICTION IN THE COURT OF THE LESSOR OR ITS ASSIGNEE AND WAIVE TRIAL BY JURY. This guaranty will bind my heirs, representatives and successors.

Signature (Individually; No Title): ____   Date: ____   Signature (Individually; No Title): ____   Date: ____

**White** - Leasing Company   **Green** - Corporate   **Canary** - Customer   **Pink** - Branch   **Goldenrod** - Customer Temp.

Rev. 5/99

4. Ownership of Equipment. The Equipment is the exclusive property of CamEra, and the Customer has no right or interest therein except as set forth in this Agreement. To secure payment of the Obligations as defined in section 8 and/or 9, You grant to Us a security interest in the Equipment while in Your possession and control, and all proceeds thereof, including insurance proceeds, for the life of the Agreement. Whenever requested by CamEra, You will execute and deliver one or more financing statements and such other documents, and You will do all such acts and things as We reasonably request to further evidence, perfect, maintain or enforce Our ownership of the Equipment or such security interest. CamEra may file or record this Agreement and execute and file, at any time, financing statements (UCC), with respect to the Equipment, signed only by Us. You irrevocably appoint CamEra your true and lawful attorney-in-fact to execute and file all such documents. The Equipment is considered personal property, and You will not permit it to become a fixture to real property. You will not allow any liens or encumbrances to be placed on the Equipment, relinquish possession or control of the Equipment; make or cause to be made any alteration, attachment or repair to the Equipment other than by CamEra. We may affix on any Equipment any notice or other indicator of Our ownership. CamEra will have the right to enter Your premises from time to time to inspect the Equipment and to make sure Our notices are still on the Equipment. BECAUSE THIS LEASE WAS GRANTED TO YOU ON THE STRENGTH OF YOUR OWN CREDIT, YOU AGREE YOU MAY NOT ASSIGN OR TRANSFER ANY OF YOUR INTERESTS UNDER THE LEASE TO ANY OTHER PERSON OR SUBLEASE ANY OF THE EQUIPMENT WITHOUT PRIOR WRITTEN CONSENT OF LESSOR OR ITS ASSIGNEE.

5. Assignment. You agree that CamEra has the right to sell, assign and/or grant a security interest in this Agreement to a third party ("New Owner") without notice to You. If this happens, You agree that the New Owner will have all of the rights, powers, privileges and remedies of CamEra under this Agreement but will not have any of CamEra's Obligations under this Agreement or any other agreement between CamEra and You. Further, if this happens, CamEra will continue to have all responsibility for service and maintenance under a separate Service Package Guarantee. If CamEra does sell this Agreement to New Owner, You hereby agree that You will make all payments to the New Owner and continue to satisfy all other of Your Obligations under this Agreement, regardless of Equipment failure, damage or loss. You agree that the New Owner's interests under this Agreement will be free from any claims, offsets or defenses You may be entitled to assert against CamEra, and You will not assert any such claims, offsets or defenses against the New Owner. You agree that the New Owner will not assume (take over) or be deemed to have assumed CamEra's Obligations for service, maintenance or otherwise.

6. Acceptance. This Agreement will be binding on CamEra only if CamEra accepts it, as evidenced only by the signature of an authorized representative of CamEra. We will not be deemed to have accepted this Agreement unless: (a) CamEra has received from You the deposit payment shown on the face of this Agreement, (b) Our credit evaluation of Customer is satisfactory and (c) this Agreement does not contain any mathematical error or unauthorized price of change. In the event of non-approval, the sole liability of CamEra shall be to refund to You the amount that has been paid to Us by You upon the signing of this Agreement.

7. Taxes. You agree that this is a "Net Lease", as described in the Uniform Commercial Code, and agree to pay when due all taxes including sales, use, privilege, excise, personal property, value added, installation permit fees which may be required by local government and other taxes, but not federal or state income or franchise taxes or business license fees which may be imposed on CamEra because of this Agreement. If You fail to pay any such amount when due, We may elect to pay it and You will promptly reimburse Us for such payment, together with interest from the date paid at the greater of 18% per annum or the maximum rate permitted by law.

8. Charges. Lease charges for the Equipment will begin on the day You sign the Delivery and Acceptance Receipt, which constitutes Your irrevocable acceptance of the Equipment. You agree to pay Lease payments as scheduled, to be received by CamEra or Assignee on or before the due date at any address We designate in writing. You must pay a deposit equal to one month's payment when this Agreement is signed. If all conditions herein are fully complied with and provided you have not ever been in default of this Agreement per paragraph 13, the security deposit will be refunded to you after the return of the equipment. You agree to pay a late charge of 15% of the payment which is late or if less, the maximum charge allowed by law, within 3 days of its due date. You agree to pay any additional cost incurred during installation due to hazardous materials found in Your building, such as asbestos. All such payments and other Obligations of Customer in connection with this Agreement are referred to collectively as the "Obligations".

9. Loss or Damage/Insurance. You are responsible for the risk of loss or for any destruction of or damage to the equipment. No such loss or damage relieves You from obligations under this Agreement. You agree to keep the equipment fully insured against loss with Us as loss payee in an amount not less than replacement cost until this Agreement is terminated. You also agree to obtain a general public liability insurance policy from anyone who is acceptable to Us and include Us as an insured on the policy. You agree to provide Us with certificates or other evidence of insurance acceptable to Us or We will enroll You in Our property damage insurance program and bill You a property damage surcharge as a result of Our increased administrative costs and credit risk. In the event of loss or damage, You agree to promptly notify Us in writing. At CamEra's sole option, We may then (a) repair or replace the damaged or lost Equipment or (b) require that You pay Us the present value of any remaining payments for the full lease term, discounted at six percent (6%) per year. Any proceeds of insurance will be paid to Us and credited against any loss or damage. If You are enrolled in Our property damage insurance program, as long as You are current at the time of the loss, the replacement value of the Equipment will be applied against any loss or damage. You must be current to benefit from this program. NOTHING IN THIS PARAGRAPH WILL RELIEVE YOU OF YOUR RESPONSIBILITY FOR LIABILITY INSURANCE COVERAGE ON THIS EQUIPMENT.

10. Indemnity. We are not responsible for any loss or injuries caused by the installation or use of the equipment. You agree to hold us harmless for loss and to defend us against any claim for losses or injury caused by the equipment, even after the lease ends, including any claim or action arising from Your recording of audio conversations (if applicable) that may be found to be unlawful.

11. Training, Use of the Equipment. Customer will permit CamEra to train Your personnel in the proper use of the Equipment. You will use the Equipment only in a lawful manner, and in accordance with our specifications and instructions. You certify that the Equipment will be used solely for business, commercial or agricultural purposes and not for personal, family or household purposes. You will not make any alterations to the Equipment and will not allow it to be used by anyone but Your employees or move it within Your premises or to any other location without the written permission of CamEra.

12. Warranties, Limitation of Liability. CUSTOMER IS RESPONSIBLE FOR CAMERA PLACEMENT. CamEra DISCLAIMS ANY WARRANTY, EXPRESS OR IMPLIED, OF MERCHANTABILITY OR OF FITNESS FOR A PARTICULAR PURPOSE OR USE. IF CamEra OR ITS EMPLOYEES, AGENTS OR FRANCHISEES FAIL FOR ANY REASON TO PROVIDE MAINTENANCE SERVICE OR MAKE FAULTY REPAIRS OR ADJUSTMENTS, OR DAMAGE ANY EQUIPMENT, WHETHER OR NOT CAUSED BY NEGLIGENCE, OUR SOLE LIABILITY TO YOU WILL BE TO MAKE ANY REPAIR, ADJUSTMENT OR REPLACEMENT NECESSARY TO RETURN SUCH EQUIPMENT TO NORMAL OPERATING ORDER. IN NO EVENT WILL CamEra OR ITS EMPLOYEES, AGENTS OR FRANCHISEES BE RESPONSIBLE FOR FAILURE TO PROVIDE SERVICE DUE TO CAUSES BEYOND THEIR CONTROL. WE AND OUR EMPLOYEES, AGENTS AND FRANCHISEES WILL IN NO EVENT BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL OR OTHER INDIRECT DAMAGES SUFFERED BY CUSTOMER, ANY OF YOUR EMPLOYEES, AGENTS OR ANY OTHER PERSON, ARISING OUT OF OR IN CONNECTION WITH THE USE OR PERFORMANCE OF THE EQUIPMENT, EVEN IF THEY HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

13. Default. If You do not fulfill Your Obligations in this Lease, You will be in default. You will be in default if any levy, seizure or attachment of the Equipment occurs, if You become insolvent or make an assignment for the benefit or creditors, if any insolvency, bankruptcy, reorganization or similar proceeding is instituted by or against You, or if a receiver is appointed for Your business. If You are ever in default, we may retain your security deposit and at our option, we can terminate or cancel this Agreement and require that you pay (1) the unpaid balance of this Agreement (discounted at 6%); (2) and/or return the equipment to us to a location designated by us. We can also use any of the remedies available to Us under the Uniform Commercial Code as enacted in the State of Lessor or its assignee or any other law. We may recover interest on any unpaid balance at the rate of 8% per annum. If we refer this Lease to an attorney for collection, You agree to pay Our reasonable attorney fees and actual court costs. If We have to take possession of the Equipment You agree to pay the cost of repossession.

14. Governing Law. This Agreement shall be deemed fully executed and performed in the state of Lessor or its Assignee's principal place of business and shall be governed by and construed in accordance with its laws. If the Lessor or its Assignee shall bring any judicial proceeding in relation to any matter arising under the Agreement, the Customer irrevocably agrees that any such matter may be adjudged or determined in any court or courts in the state of the Lessor or its Assignee's principal place of business, or any U.S. federal court sitting in the state of the Lessor or its Assignee's principal place of business, or in any court or courts in Customer's state of residence, or in any other court having jurisdiction over the Customer or assets of the Customer, all at the sole election of the Lessor. The Customer hereby irrevocable submits generally and unconditionally to the jurisdiction of any such court so elected by Lessor in relation to such matters.

15. Confidentiality. You will not disclose or permit disclosure of any information or data related to any of the Equipment without the prior written consent of CamEra, or use or permit the use of such information or data to compete with CamEra in any manner.

16. Automatic Renewal. This Agreement will automatically renew on a month-to-month basis unless You send Us written notice that You do not want it to renew, at least thirty (30) days before the end of this Agreement. We may cancel the automatic renewal term by sending You written notice that We do not want this Agreement to renew, at least fifteen (15) days before the end of any term.

Accepted by CamEra, Inc.

By: _[signature]_     Print: _[signature]_     Date: 7/18/00

**EXHIBIT "C"**

1020 Laurel Oak Road
P.O. Box 1228
Voorhees, New Jersey 08043-1228

Phone: (800) 255-0022

**ADVANTA**
*Leasing Services*
A Program of Advanta Bank Corp.

## Approval Notification

To:      CamEra, Inc.              July 18, 2000

Attention: Dan  Lowe        *294573*

We are pleased to inform you that application # **294573** has been **Approved** subject to the following terms and conditions:
**The Lease Agreement Must Read As Follows:**
**Lessee Name:**     Ourisman Chevrolet Co Inc
**DBA:**             Ourisman Chevrolet
**Lessee Address:**  4400 Branch Ave

Marlow Heights, MD 20748-1802

| | |
|---|---|
| **Credit Term (months):** | 72 |
| **New Business Rates:** | No |
| **Credit Limit:** | $ 134000 |
| **Application Amount:** | $ 187704.0 |
| **Rate Factor:** | N/A |
| **Current Remaining:** | $ 0 |
| **Purchase Option:** | Unknown |
| **Security Deposit/Adv Payments:** | 2 |
| **Advance Pay % :** | 0 |

**Personal Guarantees of:**


**Additional Approval Conditions:**
Received docs and d and a via fax.

**Documents Required:**
Lease Agreement signed by Officer, Partner, Proprietor or other requested person
Delivery and Acceptance Receipt signed by an Officer, Partner, Proprietor or other requested person
Verbal Confirmation of Delivery and Acceptance of the Equipment
All existing leases must be current  prior to funding.
Advanced Payment from Lessee or Copy of their Check
Vendor Invoice
   with Sold to *Advanta Leasing  Services, A Program of Advanta Bank Corp.*
   **and Ship To Ourisman Chevrolet Co Inc**
   **DBA: Ourisman Chevrolet**

Our obligation to purchase the equipment from the Vendor and lease it to you ("Lessee") is subject to our receipt of the above documents in a form and with terms acceptable to us in our sole judgment, as well as Lessee's compliance with any other required conditions.
Depending on which state the Lessee is located, we may require that the Lease be documented or structured in a certain way or specific Addenda to the Lease may be required.
This approval is valid until July 26, 2000 ("Expiration Date") unless: (i) terminated sooner by us in writing; (ii) a counter offer or proposal is made; or (iii) there has been a material adverse change in Lessee's financial condition.  We reserve the right to reconsider our credit decision after the Expiration Date noted above.  This may include a new application, new credit reports as well as other terms and conditions.  Approvals are for new equipment only unless noted above.
If you have any questions, please feel free to contact me at **1-800-255-0022**.
    James  Noel

**EXHIBIT "D"**



Corporate Headquarters:
1615 118th Avenue North
St. Petersburg, FL 33716
(727) 570-3900

# Delivery and Acceptance Certificate

Name of Company  **Ourisman Chevrolet**

Installation Address  **4400 Branch Ave**

**Marlow Heights, Md.   20748**

Customer hereby represents, warrants and certifies to CamEra that:

All the Equipment described on the Lease Agreement and on any attached schedule ("Equipment") has been delivered and installed; the Equipment has been inspected and tested by Customer and is in good and satisfactory operating order.

_____          **7/18/03**
Authorized Customer Signature                              Date

**MOHAMMAD RASHED, Controller**
Print Name and Title

**(301-702-6000)**      **(301-423-4400)**      _____
Phone Number          Secondary Number          Cell Number

**Douglas E. Murray**
Name of CamEra Representative

White Copy – Leasing Co.    Canary Copy – Corporate    Pink Copy – Branch    Goldenrod Copy – Customer

Rev 11/99